[Civ. No. 5136. Third Appellate District.—November 26, 1934.]

DELLA F. YOUNG, Administratrix, etc., Respondent, v. FRANK CERRATO, Appellant.

Sanford, Burger & Barry for Appellant.

Claude Minard and William C. Crossland for Respondent.

PULLEN, P. J.—This is an appeal by defendant from a judgment entered against him and in favor of plaintiff, for damages sustained by plaintiff in the loss of his truck and its cargo.

The accident occurred about three miles north of the city of Merced on the Golden State highway, about 7 o'clock on an October evening in 1932. At the time both plaintiff and defendant were proceeding northerly, defendant driving a Ford truck at about 20 miles an hour, was ahead of plaintiff, who was following in a 10-ton Studebaker truck loaded with oranges and grapefruit, going at the rate of 30 to 35 miles an hour. When defendant came abreast of a private lane leading to his destination, he drove his car toward the left and partially across the highway, when the truck of plaintiff struck the rear of defendant's truck, causing both vehicles to overturn.

Defendant testified that he saw the approaching lights of the Studebaker truck in his rear view mirror prior to making the left turn, and when asked how far away it then was, stated: "Well, I can't figure because it was night time but I think 300 feet when I looked at him." When the driver of the Studebaker reached a point approximately 100 feet to the rear of the Ford he gradually turned his truck toward the left, preparatory to passing. When plaintiff's truck was approximately 20 feet to the rear of defendant's car, defendant suddenly turned to the left to enter the driveway. Plaintiff immediately applied his air brakes, locking all wheels, and swung to the right but the cars collided causing the damage to plaintiff's truck and cargo, which is the subject of this action.

The trial court found it to be true "that plaintiff's driver failed to give any warning audible signal of his intention to pass defendant's truck", and the court also found that "the defendant at said time and place suddenly made a left-hand turn on the near approach of the plaintiff's truck without any signal of his intention so to turn".

The determination of this appeal depends, therefore, upon whether or not the failure of plaintiff to sound a warning horn while in the act of passing the truck of defendant, was such negligence as to compel judgment for defendant as a matter of law.

Various sections of the California Vehicle Act appurtenant to this question are as follows:

"Sec. 125 (d) The driver of an overtaking motor vehicle when traveling outside of a business or residence district, and under other conditions when necessary to insure safe operation, shall give audible warning with his horn or other warning device before passing or attempting to pass a vehicle proceeding in the same direction.

"Sec. 130 (a) The driver of any vehicle upon a public highway before starting, turning or stopping such vehicle shall first see that such movement can be made in safety, and if it cannot be made in safety, shall wait until it can be made in safety; then, if the operation of any other vehicle may reasonably be affected by such movement, the driver shall give a signal plainly visible to the driver of such other vehicle of the intention to make such movement. Such signal may be given either by the use of the hand and arm in the manner hereinafter provided, or by means of a mechanical or electric device which meets the requirements set forth and which has been approved by the Division of Motor Vehicles as hereinafter provided. . . . The signal herein required to be given before turning to the right or left, whether given by means of the hand and arm or by means of an approved mechanical or electric device, shall be given continuously during the last fifty feet traveled by the vehicle before turning."

It therefore appears from the findings and from the requirements of the California Vehicle Act that plaintiff was negligent in that he failed to give any audible warning of his intention to pass defendant's truck, and defendant was negligent in that he suddenly made a left turn without giving any signal of his intention so to do. To fix the liability for the accident it is necessary to determine which of the negligent acts in its natural and continuous sequence produced the collision. Plaintiff was where he had a right to be. Defendant had seen him approaching from the rear, yet without any indication of his intention so to do, had

turned across the highway. Some states hold the driver of an automobile can be held responsible only for what occurs in front of him, but an examination of section 130 (a) of the California Vehicle Act, cited above, clearly places a duty upon the driver who contemplates turning upon the highway to first ascertain if such movement can be safely made, with reference to both front and rear, and if not to wait until it can be made in safety, and then shall indicate by a signal his intention so to do. We cannot see where the negligence of plaintiff was a proximate cause of the injury and therefore we cannot hold him to have been guilty of contributory negligence. ■ One driving in the rear of another car has the right to assume that a motorist will obey the law of the road and is not bound to anticipate that a car will leave its proper side and cross the highway, at least where there is no intersection of public highways, and nothing to lead one in the exercise of reasonable care to foresee such action. (*Simonsen* v. *L. J. Christopher Co.*, 186 Cal. 786 [200 Pac. 615].)

As the court said in the case of *McIver* v. *Allen*, 33 Ariz. 28 [262 Pac. 5], where a car traveling at a rate of four or five miles an hour was attempting to make a left turn and was damaged by being struck by a car traveling 30 to 45 miles per hour:

"It should have been evident to the plaintiff that he was placing himself in a perilous position by turning in front of a car only 150 feet away and approaching at the rate of 30 to 35 miles an hour while he was going at a speed of only 4 or 5. It is true he claims that he had given the proper signal and thought that the drivers of the cars would reduce their speed to such an extent that it would not be dangerous to cross; but it must be remembered that it was between intersections, where such a turn was not anticipated to the same extent it would have been at a crossing; that it was night time, and therefore more difficult to see the hand indicating such intention; and that it is probable that he withdrew it before the defendant . . . was close enough to see it. The danger of left-hand turns on much traveled highways between intersections is so great that they should not be attempted without the exercise of extra precaution. The peril of such turns is so well recognized that they are not permitted at all at certain street inter-

sections even upon the exercise of the greatest care. We are of the view, therefore, that, notwithstanding the fact that the defendant . . . may have been running at an unreasonable rate of speed at the time of the accident, or so immediately prior thereto, that he did not then have control of his car, he and his codefendant were entitled to an instruction permitting the jury to say whether the plaintiff did not, by his own negligence, contribute to his injury.''

In the case of *Litherbury* v. *Kimmet,* 183 Cal. 24 [195 Pac. 660], the court held in the main opinion that, '' 'The necessity for the driver of a motor vehicle to signal before turning, and particularly before turning to the left, is so great, and the practice of signaling in such a case is so universal and so relied upon, that there is no room for a reasonable difference of opinion as to the conduct of a driver who fails to signal without making certain that there is no one behind him. He is guilty of negligence and the court is justified in so charging the jury.' '' Upon rehearing, it said again, ''We are satisfied as to the correctness of this statement as applied to the facts of the particular case, where the motor truck, whose sudden turning from its course to the left caused the collision, was proceeding along a street of a large city, where the coming up of vehicles behind it was always anticipated, and therefore necessarily guarded against, and there was nothing to relieve the driver of his obligation to exercise care in this respect. The statement was, however, not intended as one of universal application, and it is not difficult to conceive of cases to which it would not be at all applicable.''

Although the accident in the cited case occurred in a large city where, as the court said, the coming up of vehicles from behind is always to be anticipated, the collision in the case before the court occurred on the Golden State highway, one of the most traveled thoroughfares between San Francisco and Los Angeles and through the San Joaquin Valley, where trucks and other vehicles are almost constantly passing to and fro. Under these circumstances where defendant made a left-hand turn across the main traveled highway at night, intending to go into a private driveway, and left his normal position in the road without the giving of any signal of his intention so to do, to a car known by him to be approaching from the rear, it is quite

apparent that the proximate cause of the collision was not the omission of plaintiff to sound his horn, but the failure of defendant to obey the rule as prescribed in section 130 (a) of the California Vehicle Act. We cannot say that plaintiff was guilty of contributory negligence as a matter of law in failing to give warning of his intention to pass.

The evidence clearly shows, therefore, negligence on the part of defendant, which negligence was the proximate cause of the collision, and, as stated already, the negligence of plaintiff's driver in failure to comply with the terms of the California Vehicle Act regarding the giving of an audible signal was not the proximate cause of the collision.

The judgment should be affirmed and it is so ordered.

Plummer, J., and Thompson, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 24, 1935.